IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DON ROSSER,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
|         v. ) | CV-07-BE-0270-S |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
|     **Defendant.** ) | |

## MEMORANDUM OPINION

### I. Introduction

On June 26, 2003, claimant, Don Rosser, filed applications for Disability Insurance Benefits and Supplemental Security Income payments alleging disability commencing on June 1, 2002 because of back problems, bipolar disorder, borderline personality disorder, sleep disorder, and depression. The Commissioner denied the claims. Claimant timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on March 2, 2005. In a decision dated August 23, 2005, the ALJ found that claimant was not disabled within the meaning of the Social Security Act and was not eligible for Disability Insurance Benefits and Supplemental Security Income payments. On December 11, 2005, the Appeals Council denied the claimant's request for review. The claimant has exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C. § 405(g) and 1631(c)(3). For the reasons stated below, the Commissioner's decision is reversed and remanded.

## II. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standard and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). However, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## III. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months.

To make this determination, the Commissioner employs a five-step, sequential process:

(1) Is the person presently employed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

### IV. Facts

Claimant was forty-five years old at the time of the hearing and has a high school education plus 56 hours of computer training. (R. 16). His past work experience includes employment as a brick mason helper, a charger, a pipe fitter, and a construction laborer. (R. 17). Claimant alleges that he became disabled on June 1, 2002 because of back problems, bipolar disorder, borderline personality disorder, sleep disorder, and depression. (R.17). At the hearing, claimant testified that he had worked at various jobs, and was physically able to do the work, but that he had difficulty getting along with other people when he got frustrated. (R. 18). Even his brother fired him. (R. 18).

**A.    VAMC Treating Records**

Medical evidence from the treating sources at the Veterans Administration Medical Center ("VAMC") showed that claimant was "diagnosed at various times since the year

preceding the alleged onset date with bipolar disorder, depressed; and borderline personality disorder . . . ." (R. 18). The VAMC records first list claimant as latent schizophrenic on December 19, 2001. (R. 183). The VAMC records also listed physical deficits such as minimal loss of normal lordosis, mild disc bulge at L5-S1, disc bulge of L4-5, and possible minimal stenosis at L3-4 and L4-5. (R. 18). Claimant also had been working full time after the alleged onset date, he smoked marijuana occasionally, he was non-compliant with his medication, and he was not interested in group therapy. (R. 18).

**B.    Reviewing and Consulting Sources**

On October 21, 2002, Kenneth Warren Ph.D., a reviewing psychologist at the Disability Determination Service, completed a Psychiatric Review Technique Form ("PRTF"). (R. 101-114). Dr. Warren determined that claimant's mental impairments "have produced no more than a moderate limitation of his activities of daily living and social functioning, and a mild limitation of his ability to maintain concentration, persistence, or pace." (R. 20; 111).

On September 29, 2003, Dr. Zakir Khan performed a consultative medical examination. (R. 18; 206). Dr. Khan diagnosed claimant with a history of bipolar depression and back pain, but stated that claimant "should have no physical deficits with lifting, carrying, walking , hearing, speaking or traveling." (R. 18; 209). Dr. Khan deferred to a mental health professional for further evaluation of claimant's bipolar depression. (R. 209).

On October 2, 2003, John Neville, Ph.D. performed a consultative psychological examination. (R. 18; 210). Dr. Neville diagnosed claimant with "bipolar disorder, most recent episode depressed and circadian rhythm sleep disorder." (R. 18; 212). Dr. Neville concluded that claimant is "capable of functioning independently, able to understand instruction, carry out

4

instructions dependent on his sleep status, respond appropriately to co-workers, accept supervision, but his ability to cope with work pressure was variable at the time of assessment." (R. 18; 212).

C.  **Hearing Testimony**

Claimant and Mary Kessler, a vocational expert, testified at the hearing. Claimant's testimony primarily consisted of his work history, his treatment at VAMC, his difficulties sleeping and concentrating, his frustration, and his anger. (R. 278-291). Ms. Kessler testified about her review of claimant's file, including testimony that a person of claimant's age, education, work experience and residual functional capacity could work as a cleaner, counter clerk, and receptionist. (R. 292-293). Ms. Kessler also stated that these jobs were available in the national economy. (R. 293-294).

D.  **Subsequent VAMC Records**

On July 25, 2005, after the hearing, the ALJ re-opened the record to allow claimant to submit new medical evidence from the VAMC that documented his treatment from September 8, 2003 through May 17, 2005. (R. 18). The records show claimant's continued treatment for bipolar disorder, history of marijuana use, borderline personality disorder, and latent schizophrenia, while also recording changes in prescribed medication and periods of noncompliance with that medication, and his complaints of not being able to get work.[1] (R. 18-19; 214-275).

---

[1] The court notes that some of claimant's difficulties in finding employment are directly related to his marijuana abuse. Claimant was placed on probation for a felony possession of marijuana in 2003. As the VAMC records indicate, this felony conviction negatively impacted claimant's employment options. (R. 144).

The medical records document claimant's disturbing behavior in 2004 and 2005. For example, in September 2004, the records noted that claimant "wants to hurt people at times. States he hates the Bessemer Police, wants to do what 'Timothy McVay' did. Occurs daily." (R. 222). Based on these remarks, VAMC personnel notified the VA Police and the Bessemer Police. (R. 223). In December 2004, claimant was having "homicidal thoughts" and "hears his voice telling him to hurt someone." (R. 218). In March 2005, although claimant denied homicidal thoughts, he was exhibiting unusual behavior such as talking to himself constantly, having ruminating thoughts, and talking to "people in the past." (R. 217).

**E.    The ALJ's Findings**

Based on the evidence of record, the ALJ found that claimant's impairments of "mild disc bulge and stenosis in the lumbar spine, borderline personality disorder, and history of bipolar disorder" are severe within the meaning of the Regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 19). Although the ALJ stated that he questioned the sufficiency of the evidence regarding the severity of claimant's back problem based on the diagnostic testing, he resolved the benefit of the doubt in claimant's favor. (R. 19). The ALJ determined that the evidence failed to show more than "moderate limitations treated with medication," and that no examining or treating medical source reported any contradicting conclusion. (R. 19).

The ALJ then considered the opinions of Dr. Warren , the reviewing psychologist at the Disability Determination Service. Dr. Warren completed the PRTF and concluded that "claimant's mental impairments have produced no more than a moderate limitation of his activities of daily living and social functioning, and a mild limitation of his ability to maintain

concentration, persistence, or pace." (R. 19; 111).  The ALJ again found no contradicting evidence from any treating or examining medical source. (R. 19).   Thus, claimant satisfied steps 1 and 2 of the sequential analysis, but failed to satisfy step 3.

The ALJ then evaluated claimant's residual functional capacity by considering "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . and any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations." (R. 20).  Based on this criteria, the ALJ concluded that claimant "retain[ed] the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently, stand and walk up to six hours per eight hour day, and sit up to six hours per eight hour day." (R. 20).  The ALJ found that claimant "requires jobs that can be performed with moderate pain; a moderate limitation of the ability to concentrate; a moderate limitation of the ability to respond appropriately to supervisors, co-workers, and the public; and a moderate limitation of the ability to understand, remember, and carry out instructions." (R. 20).

The ALJ then found that claimant was unable to perform his past relevant work, which was classified as heavy to very heavy exertional levels, but that he is capable of performing a "significant range of light work." (R. 20-21).  Based on the testimony of Mary Kessler, the vocational expert, regarding claimant's age, education, past relevant work experience, and residual functional capacity, the ALJ found that claimant could work light jobs such as cleaner, cashier clerk, or counter clerk, and sedentary jobs such as receptionist or office clerk. (R. 21-22). The ALJ also accepted Ms. Kessler's testimony that these jobs exist in significant numbers in the

national economy. (R. 21-22). Thus, claimant satisfied step 4 of the sequential analysis, but failed to satisfy step 5, leading to a determination that claimant is "not disabled" within the meaning of the Act.

## V. Issues Presented

In this appeal, claimant argues that the ALJ's residual functional capacity findings were against the weight of the evidence and improperly based on the opinion of a non-examining reviewing consultant.[2]

## VI. Discussion

Claimant argues that the ALJ's residual functional capacity findings were against the weight of the evidence and improperly based on Dr. Warren's PRTF. The Commissioner counters that the ALJ properly considered Dr. Warren's assessment, in addition to the other medical evidence of record, in reaching its determination.

Where a claimant has presented a colorable claim of mental impairment, the ALJ must complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). Agency regulations require the ALJ to use the "special technique" that requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas, including:

    (1) activities of daily living;
    (2) social functioning;

---

[2] Claimant also presents two additional issues: second, the ALJ's residual functional capacity findings were baseless. Third, the ALJ improperly considered or ignored the medical evidence of record in determining that claimant has moderate limitations. Because the court's decision on the first issue is dispositive, the court will not address the remaining issues.

>    (3) concentration, persistence, or pace; and
>    (4) episodes of decompensation.

*Id.* at 1213; 20 C.F.R. § 404.1520a(c)(3)-(4).

Based on a history of borderline personality disorder, bipolar disorder, and latent schizophrenia, claimant successfully presented at least a colorable claim of mental impairment. On October 21, 2002, based on his review of the medical records, Dr. Warren completed the PRTF, which is a standard form that indicates claimant's degree of limitation in the four functional areas. (R. 101-118). Although the ALJ referred to Dr. Warren's PRTF, he did not append Dr. Warren's PRTF to his decision nor adopt it as his own. As such, he must have adequately incorporated its mode of analysis into his findings and conclusions to satisfy the regulation requirements. The court finds that he did not meet these requirements.

The ALJ did expressly rely on Dr. Warren's PRTF in reaching his decision. (R. 19; 20). He gave cursory consideration to functional areas 1-3 of the PRTF by quoting, without engaging in further analysis, Dr. Warren's PRTF findings that claimant's impairments produced "no more than a moderate limitation of his activities of daily living and social functioning, and a mild limitation of his ability to maintain concentration, persistence, or pace." (R. 19; 20). This language was quoted directly from the PRTF. (R. 111). Although the PRTF indicated no "episodes of decompensation," functional area four, the ALJ did not even mention this last functional area in his decision. Without the ALJ's individual analysis, the court is unable to determine whether the ALJ's failure to apply the PRTF special technique was harmless. Because the ALJ did not append the PRTF nor adequately incorporate the PRTF's mode of analysis into his findings or conclusions, the court finds that he failed to satisfy the regulation requirements.

Even assuming *arguendo* that the ALJ's reference to Dr. Warren's PRTF would comply with the regulation, the court notes that Dr. Warren's PRTF was completed in 2002. That report did not take into account the VAMC records that were produced after the March 2, 2005 hearing and that covered the period from September 2003 through May 2005. The subsequent medical records indicated that claimant exhibited disturbing behavior between 2003 and 2005. For example, the September 2004 VAMC records indicate that claimant "wants to hurt people at times. States he hates the Bessemer Police, wants to do what 'Timothy McVay' did. Occurs daily." (R. 222). The December 2004 records note that claimant hears voices telling him to hurt others. (R. 218). Treating physicians at the VAMC found this behavior to be disturbing, and at their recommendation the hospital staff contacted both the VA and Bessemer Police. (R. 223). The medical records also indicate that claimant's homicidal thoughts continued for months, at least through his December 2004 doctor's visit.

In his opinion below, the ALJ did not acknowledge and analyze this behavior and its effect, if any, on the four functional areas, but relied primarily on Dr. Warren's 2002 PRTF. Without the ALJ's analysis, the court is unable to determine how the ALJ reconciled the behavior and medical findings in 2003-05 with his own finding of no disability. The ALJ's primary reliance on Dr. Warren's assessment is troubling because that assessment had occurred more than two years before claimant's hearing and did not take into account the 2003-05 VAMC records. *See Moore*, 405 F.3d at 1214. Accordingly, the court finds that the ALJ's opinion, relying so heavily on Dr. Warren's PRTF to establish claimant's mental limitations, was error requiring remand.

## VII. Conclusion

For the reasons previously stated, the court REVERSES and REMANDS this case. Upon remand, the Commissioner should evaluate claimant's mental impairment in accordance with the procedures set forth in 20 CFR § 404.1520(a) and required by the Eleventh Circuit's *Moore* decision. The court makes no findings as to the other issues presented in this appeal.

The court will enter a separate Order in conformity with this memorandum.

DONE and ORDERED this 26th day of February 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE